**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTIRCT OF ILLINOIS**
**EASTERN DIVISION**

Patrick McGrath, on behalf of himself
and all others similarly situated,

                                            **CASE NO.:**

        **Plaintiff,**

v.

S.C. Johnson & Son, Inc.,

        **Defendant.**

_____/

## CLASS ACTION COMPLAINT

Plaintiff, Patrick McGrath (hereinafter "Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, brings this class action against Defendant S.C. Johnson & Son, Inc. (hereinafter "Defendant") and alleges:

### I.      INTRODUCTION

1.     Defendant develops, manufacturers, markets, distributes, and sells its "FAMILY GUARD" Brand Disinfectant Cleaner under two scents: (1) Fresh and (2) Citrus (the "Disinfectant Cleaner Products"), which are both prominently labeled as, "EXPERTLY FORMULATED FOR USE IN HOMES WITH **CHILDREN AND PETS**."

2.     Additionally, Defendant develops, manufacturers, markets, distributes, and sells its "FAMILY GUARD" Brand Disinfectant Spray under two scents: (1) Fresh and (2) Citrus (the Disinfectant Spray Products"), which are both prominently labeled for "USE ON **100+**

**SURFACES**, INCLUDING WHERE KIDS AND PETS PLAY," against a backdrop of themed images, such as a baby carriage and dog bowl.[1]

3.      Defendant's marketing deceives consumers into believing the Products are safe for children and pets. To further reinforce this message, the "FAMILY GUARD" Brand name is always displayed on the Products within a shield graphic—a symbol of safety and protection.



4.      Rather than act as a "FAMILY GUARD" that is "EXPERTLY FORMULATED FOR USE IN HOMES WITH CHILDREN AND PETS" and for "USE ON 100+ SURFACES, INCLUDING WHERE KIDS AND PETS PLAY," however, Defendant's Products contain Alkyl

---

[1] Together, the Disinfectant Cleaner Products and Disinfectant Spray Products are hereinafter the "Products."

dimethyl benzyl ammonium chloride C15, C14, C12, and C10, which are harmful to both children and pets.

5.      Plaintiff brings this action against Defendant on behalf of himself and similarly situated Class Members to enjoin Defendant from deceptively marketing the Products and to recover compensation for injured Class Members.

## II.      JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Defendant. In addition, more than two-thirds of the members of the class reside in states other than the state in which Defendant is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      This Court has personal jurisdiction over Defendant because it has substantial aggregate contacts with this District, including engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, because Defendant placed the Product into the stream of commerce directed at this District, and because Defendant purposely availed itself of the laws of the United States and the State of Illinois.

8.      In accordance with 28 U.S.C. § 1391(b) and (c), venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendant transacts business in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

### III.    PARTIES

9.    Plaintiff is a resident and citizen of Illinois, who purchased the Disinfectant Cleaner Products during the relevant time period. The Disinfectant Cleaner Products are substantially similar to the Disinfectant Spray Products; thus, Plaintiff represents purchases of the Products.

10.    Defendant, S.C. Johnson & Son, Inc., is a Wisconsin corporation with a principal place of business in Racine, Wisconsin.

### IV.    FACTUAL ALLEGATIONS

**A.    THE PRODUCTS ARE MARKETED AS SAFE FOR CHILDREN AND PETS**

11.    Since April 2023, Defendant has manufactured, distributed, marketed, and sold the Disinfectant Cleaner Products, both prominently labeled as a "FAMILY GUARD" that is "EXPERTLY FORMULATED FOR USE IN HOMES WITH **CHILDREN AND PETS**."

12.    Labeling exemplars of the Disinfectant Cleaner Products are depicted below:



13.     The Disinfectant Cleaner Products are available for sale at brick-and-mortar retailer locations as well as a variety of online retailers, such as Amazon. When sold online, Defendant provides product and marketing images to the online retailers, which prominently feature the "FAMILY GUARD" and "EXPERTLY FORMULATED FOR USE IN HOMES WITH **CHILDREN AND PETS**" marketing.

14.     For example, the following images come from Amazon's webpage for the Disinfectant Cleaner Products.

 


 

15.     Since April 2023, Defendant has manufactured, distributed, marketed, and sold the Disinfectant Spray Products, both prominently labeled as a "FAMILY GUARD" that is for "USE ON 100 + SURFACES, INCLUDING WHERE KIDS AND PETS PLAY." Defendant also prominently features photos of a baby carriage, a dog bowl, a family dinner table, and a pet crate, among other household items.

16.     Labeling exemplars of the Disinfectant Spray Products are depicted below.



17.     The Disinfectant Spray Products are available for sale at brick-and-mortar retailer locations as well as a variety of online retailers, such as Amazon. When sold online, Defendant provides product and marketing images to the online retailers, which prominently feature the

"FAMILY GUARD," "USE ON 100+ SURFACES INCLUDING WHERE KIDS & PETS PLAY," and photos of a baby carriage, dog bowl, pet cage, and family dinner table marketing.

18.     For example, the following images come from Amazon's webpage for the Disinfectant Spray Products.





**B.      DEFENDANT MARKETS THE PRODUCTS IN THIS MANNER BECAUSE IT KNOWS THE CLAIMS ARE COMPELLING TO CONSUMERS WHO WILL PAY MORE FOR PET AND CHILDREN SAFE PRODUCTS**

19.      Defendant markets the Products in the manner described above because it knows the claims are compelling to consumers, who are willing to pay more for cleaning products that are safe for children and pets.

20.      In fact, Defendant started the Family Guard brand, which includes the Products, in 2023, to specifically target consumers who are willing to pay more for cleaning products that are safe for children and pets. For example, Defendant's website states:

> The FamilyGuard™ Brand Disinfectant Spray (EPA Registration # 4822-548) is designed for use on 100+ surfaces[ ], including where kids and pets play, and the FamilyGuard™ Brand Disinfectant Cleaner (EPA Registration # 4822-613) is expertly formulated for use in homes with children and pets. These new FamilyGuard™ Brand products kill 99.9% of germs, including the virus that may cause COVID-19 and the H1N1 virus.[ ]  The FamilyGuard™ Brand Disinfectant Cleaner cuts through dirt, dust, grease and grime while the Disinfectant Spray fights tough odors and disinfects with a pleasant scent.[2]

21.      American consumers are more health conscious than ever and look for cleaning products that are safe for their children and pets. The cleaning product labels convey safety information to consumers regarding ingredients that consumers can and do use to make purchasing decisions.

22.      Consumers desire cleaning product ingredients that are safe for their children and pets for a variety of reasons, including the perceived health benefits in avoiding breathing in or coming in contact with certain chemicals and cleaning agents, among others. As a result, consumers are willing to pay more for cleaning products that are marketed as being specially formulated for their children's and pets' safety.

---

[2] https://www.scjohnson.com/en/newsroom/all-releases/2023/april/sc-johnson-launches-new-familyguard (footnotes omitted) (last accessed May 14, 2024)

23.     Reasonable consumers, like Plaintiff, understand and expect cleaning products labeled as "EXPERTLY FORMULATED FOR USE IN HOMES WITH **CHILDREN AND PETS**" and/or "USE ON 100 + SURFACES, INCLUDING WHERE KIDS AND PETS PLAY" to be ones that do not contain any ingredients that are harmful to children and/or pets.

24.     Reasonable consumers, like Plaintiff, lack the meaningful ability to test or independently ascertain the truthfulness of cleaning products labeled as "FAMILY GUARD" and "EXPERTLY FORMULATED FOR USE IN HOMES WITH **CHILDREN AND PETS**" and/or "USE ON 100 + SURFACES, INCLUDING WHERE KIDS AND PETS PLAY," especially at the point of sale. Reasonable consumers would not know the true nature of the Products' ingredients by merely reading the ingredient label; its discovery requires investigation beyond the store or online retailer, and knowledge of cleaning product chemistry beyond that of a normal consumer. Thus, reasonable consumers must, and do, rely on cleaning product manufacturers such as Defendant to honestly report the nature of cleaning products' ingredients and safety. Defendant intends and knows that consumers rely upon labeling statements about the safety of the product for pets and children in making their purchasing decisions.

## C.     DEFENDANT'S SAFETY REPRESENTATIONS ARE FALSE AND MISLEADING

25.     While Defendant prominently labels the Products as a "FAMILY GUARD" that is "EXPERTLY FORMULATED FOR USE IN HOMES WITH **CHILDREN AND PETS**" and for "USE ON 100 + SURFACES, INCLUDING WHERE KIDS AND PETS PLAY" the ingredients tell a different story.

26.     The Disinfectant Cleaner Products' ingredients are:

ACTIVE INGREDIANTS:
Alkyl dimethyl benzyl ammonium chloride *(50% C14, 40% C12, 10% C10)……………0.26%
INERT INGREDIENTS……………………………………………………………………99.74%

TOTAL……………………………………………………………………………100.00%

27.     The Disinfectant Spray Products' ingredients are:

Active Ingredients:
Triethylene Glycol - 6 %
n-Alkyl Dimethyl Benzyl Ammonium Saccharinate (40% C12, 50% C14, 10% C15) - 0.2 %
Inactive Ingredients:
Inert Ingredients- 93.8%
Total- 100%

28.     Alkyl dimethyl benzyl ammonium chloride C15, C14, C12, and C10 are harmful to both children and pets.

29.     Alkyl dimethyl benzyl ammonium chloride is considered a "quat." Quats are a class of chemicals with disinfecting properties (killing bacteria, viruses, and fungi).

30.     Quats, like the Alkyl dimethyl benzyl ammonium chloride C15, C14, C12, and C10 in the Products, are classified as pesticides and regulated as pesticides by the U.S. Environment Protection Agency. When it comes to pesticides, "the label is the law."

31.     There can be no expertly formulated product for homes with children and pets that contain any traces of alkyl dimethyl benzyl ammonium chloride C15, C14, C12, and C10 because they are simply harmful to children and pets.

32.     Scientists have found that quats can disrupt important cellular pathways. Exposure to two quat compounds, alkyl dimethyl benzyl ammonium chloride (ADBAC), which is found in the Products, and dodecyl dimethyl ammonium chloride (DDAC), has been linked to developmental and fertility problems in mice.[3]

33.     According to an article from Mount Sinai Selikoff Centers for Occupational Health and NYU School of Medicine Bellevue/NYU Occupational & Environmental Medicine

---

[3] https://cen.acs.org/safety/consumer-safety/know-enough-safety-quat-disinfectants/98/i30 (last accessed May 15, 2024)

Clinic, exposure to quats has the potential to cause "serious and preventable health effects" including contact dermatitis, triggering asthma symptoms or new onset asthma, and eye and mucous membrane injuries from splashes or contact with mists containing quats.[4]

34.     Additionally, a peer-reviewed publication reports quaternary ammonium compounds cause reproductive toxicity in animals.[5]

35.     Because of their associated health dangers, many states government advise citizens to avoid cleaning products that contain Alkyl dimethyl benzyl ammonium chloride. For example, the California Department of Pesticide Regulation advises to "Avoid products that list these ingredients:"

> Quaternary ammonium compounds (look out for these: alkyl dimethyl benzyl ammonium chloride (ADBAC), benzalkonium chloride, dodecyl-dimethylbenzyl ammonium chloride; lauryl dimethyl benzyl ammonium chloride; benzyl-C10-16alkyldimethyl, chlorides; benzyl-C12-16-alkyldimethyl, chlorides; benzyl-C12-18-alkyldimethyl, chlorides; benzyl-C16-18-alkyldimethyl, chlorides; and didecyl and didecyl dimethyl benzyl ammonium chloride)[6]

36.     Additionally, the Connecticut Department of Public Health provided a bulletin on "Tips for Cleaning Child Care Facilities the Safe & Healthy Way," and declared:

> Children are at greater risk for exposure to toxic chemicals
>
> It is important to avoid introducing unneeded chemicals into the child care environment because:
>
> *Children's bodies are still developing

---

[4] https://www.mountsinai.org/files/MSHealth/Assets/HS/Patient-Care/Service-Areas/Occupational-Medicine/QACsInfoforPhysicians_18.pdf

[5] Vanessa E. Melin, Travis E. Melin, Brian J. Dessify, Christina T. Nguyen, Caroline S. Shea & Terry C. Hrubec. 2015. Quaternary Ammonium Disinfectants Cause Subfertility in Mice by Targeting both Male and Female Reproductive Processes. Reproductive toxicology (Elmsford, N.Y.) 50, 163-70.

[6] https://www.epa.gov/sites/default/files/2013-08/documents/fact_sheet_for_families_choosing_safer_products_to_clean_and_sanitize_your_home.pdf (last accessed May 15, 2024)

*Exposure to chemicals can have a greater health impact
*Children breathe faster and eat and drink more with respect to their size
*Behaviors like crawling on floors and putting things in their mouths can expose children to more chemicals and microorganisms.[7]

37.     In regards to the safety of quats in cleaning products for children, the Connecticut Department of Public Health declared:

Another family of chemicals to avoid during routine cleaning and disinfection are quaternary ammonium compounds or "Quats." They can cause similar health problems. Quats are found in many disinfectants. Here are some examples of quats:

*Benzalkonium chloride– also called: N-alkyl-dimethyl benzyl ammonium chloride; alkyldimethylbenzylammonium chloride; Zephiran; Benzalkon A; ADBAC
*Didecyl dimethyl ammonium chloride: Also called: DDAC[8]

38.     There are studies showing quaternary ammonium compounds detected in human blood was associated with increased inflammation, decreased mitochondrial function and disruption of cholesterol.[9]

39.     Moreover, quaternary ammonium compounds have been found to alter neurodevelopment in cells.[10]

---

[7] https://portal.ct.gov/-/media/departments-and-agencies/dph/dph/environmental_health/eoha/pdf/030216tipsforcleaningchildcarefacilitiespdf.pdf (last accessed May 15, 2024)

[8] *Id.*

[9] Terry C. Hrubec, Ryan P. Seguin, Libin Xu, Gino A. Cortopassi, Sandipan Datta, Alexandra L. Hanlon, Alicia J. Lozano, Valerie A. McDonald, Claire A. Healy, Tyler C. Anderson, Najaha A. Musse & Richard T. Williams. 2021. Altered toxicological endpoints in humans from common quaternary ammonium compound disinfectant exposure. Toxicology reports 8, 646-656.

[10] Josi M. Herron, Hideaki Tomita, Collin C. White, Terrance J. Kavanagh & Libin Xu. 2021. Benzalkonium Chloride Disinfectants Induce Apoptosis, Inhibit Proliferation, and Activate the Integrated Stress Response in a 3-D in Vitro Model of Neurodevelopment. Chemical research in toxicology 34(5), 1265-1274.

40. The Environmental Working Group ("EWG") is a nonprofit group that specializes in research and advocacy in the areas of agricultural subsidies, toxic chemicals, drinking water pollutants, and corporate accountability.

41. EWG rates cleaning products based on their hazard score. The Healthy Cleaning ingredient hazard score, from A to F, reflects known and suspected hazards linked to the ingredients. The EWG VERIFIED® mark means a product meets EWG's strictest criteria for transparency and health.



42. EWG rates, Alkyl Dimethyl benzyl ammonium chlorides (C12-16), which are present in the Products, as a D rating for a hazard score, due to "Evidence of respiratory effects; general systemic/organ effects; developmental/endocrine/reproductive effects."[11]



D. **DEFENDANT'S ATTEMPTED DISCLAIMERS ARE INEFFECTIVE**

43. The back label of each Disinfectant Cleaner Product states in fine print in the bottom right corner, "KEEP OUT OF REACH OF CHILDREN AND PETS." At some point during the Class Period, Defendant also added to the front label of each Disinfectant Cleaner Product, in small print on the bottom right, "KEEP OUT OF REACH OF CHILDREN" (together, the "Out of Reach" Statements").

---

[11] https://tinyurl.com/57uvypeu.




44.     The back label of each Disinfectant Spray Product repeats the bolded "FAMILY GUARD" shield, next to which consumers are encouraged to use the Product on the "surfaces your family touches the most . . . for coverage you can trust[.]" Below intervening fine-print instructions for use, at the bottom of the can, the back label also has a section for "PRECAUTIONARY STATEMENTS: HAZARDS TO HUMANS & DOMESTIC ANIMALS," directly below which is states "CAUTION: Causes moderate eye irritation" (the "Precautionary" Statement).



45. Because the Out of Reach and Precautionary Statements are in small print, removed from the more prominent challenged safety representations, it is likely many consumers will not see them, particularly before purchase.

46. Additionally, reasonable consumers are unlikely to read the Out of Reach and Precautionary Statements in any detail or give them much weight because similar statements appear on most cleaning products. Consumers are thus likely to write off such statements as generic labeling requirements, or assume that contradictory marketing statements, like the ones challenged here, must be true or approved and thus "prevail" over any conflicting warning.

47. Yet even if a consumer sees and reads the Out of Reach Statements, they, like Plaintiff, reasonably believe them to mean that children and pets are not capable of safely using

15

the Products, *i.e.* the Products are intended for use by a responsible adult that can read and apply the Products' instructions for use.

48.     Reasonable consumers would not, however, interpret the Out of Reach Statements to mean the Products are not safe for use in a home with and on surfaces used by children and pets, since it is prominently touted as a "FAMILY GUARD" "EXPERTLY FORMULATED FOR USE IN HOMES WITH CHILDREN AND PETS." Instead, reasonable consumers, like Plaintiff, interpret the Out of Reach Statements to be consistent with other labeling representations, including the challenged safety representations.

49.     For those few consumers that see and read the Precautionary Statement on the Disinfectant Spray Products, they would read it to caution only against getting the product in your eye. Consumers thus reasonably believe that while the Disinfectant Spray Product is safe for "USE ON . . . SURFACES . . . WHERE KIDS AND PETS PLAY," it nonetheless should be kept out of your eyes, which makes perfect sense given the nature of the product.

50.     Only by continuing to read the fine print Precautionary Statement through several more sentences and into the following column would a consumer finally arrive at information directed at "ASTHMA AND ALLERGY SUFFERERS[,]" telling them to "Consult your physician before using this product in your home. Before spraying remove birds. After use, ventilate normally prior to returning birds to treated area" (the "Asthma Statement").

51.     Even in the unlikely event a consumer ever sees the Asthma Statement, because it is addressed to "asthma and allergy sufferers," only those already suffering from those conditions would be likely to continue reading and ever reach the portion addressing the (unidentified and unexplained) potential harm to pet birds.

52.     Defendant provides these small print statements because it knows the alkyl dimethyl benzyl ammonium chloride C15, C14, C12, and C10 in the Products are harmful to both children and pets.

53.     Reasonable consumers, including Plaintiff, would not expect a product labeled as "EXPERTLY FORMULATED FOR USE IN HOMES WITH CHILDREN AND PETS" and for "USE ON 100 + SURFACES, INCLUDING WHERE KIDS AND PETS PLAY," among other safety representations, to contain ingredients that are harmful to children and pets, like alkyl dimethyl benzyl ammonium chloride C15, C14, C12, and C10.

54.     Further, reasonable consumers, such as Plaintiff, are not expected to search the Product labeling for ingredients or disclaimers that contradict the "FAMILY GUARD," "EXPERTLY FORMULATED FOR USE IN HOMES WITH CHILDREN AND PETS," and "USE ON 100 + SURFACES, INCLUDING WHERE KIDS AND PETS PLAY" statements.

55.     Nor does the Products' labels disclosure of alkyl dimethyl benzyl ammonium chloride C15, C14, C12, and C10 as ingredients sufficiently warn consumers that they are in fact harmful to children and pets, since most consumers are not familiar with the health effects of various chemical compounds.

56.     Indeed, no reasonable consumer would know, or have reason to know, that the ingredients in Defendant's Products are not safe for use in homes with children or pets. That information was within the exclusive knowledge of Defendant and not known to ordinary consumers, including Plaintiff and other Class Members. Consumers are led to believe Defendant's "FAMILY GUARD" Products are safe for use in homes with children and pets and have no reason to believe the Products are harmful for children and pets.

**E.     PLAINTIFF'S PURCHASE AND INJURY**

57.     In 2024, Plaintiff purchased Defendant's Disinfectant Cleaner Products on Amazon.

58.     Plaintiff has children and pets at his home.

59.     When purchasing the Disinfectant Cleaner Products, Plaintiff was exposed to, read, and relied upon Defendant's labeling claims, "FAMILY GUARD" and "EXPERTLY FORMULATED FOR USE IN HOMES WITH CHILDREN AND PETS," which were intended to appeal to consumers, like him, who are interested in products that are safe for children and pets. Plaintiff believed these claims, which were and are deceptive because the Disinfectant Cleaner Products contain alkyl dimethyl benzyl ammonium chloride C14, C12, and C10, which are harmful to both children and pets. No product can be expertly formulated or safe for use in homes with children and pets that contains any trace of alkyl dimethyl benzyl ammonium chloride C14, C12, or C10.

60.     The Disinfectant Spray Products are substantially similar to Defendant's Disinfectant Cleaner Products in that they are also marketed as safe for use in homes with children and pets, including through use of the "FAMILY GUARD" shield and representations that the product is for "USE ON 100+ SURFACES INCLUDING WHERE KIDS & PETS PLAY" and the "surfaces your family touches the most[.]" Like the safety statements on the Disinfectant Cleaner Products, these statements were intended to appeal to consumers, like Plaintiff, who are interested in products that are safe for children and pets. The statements, however, are false and misleading because, like the Disinfectant Cleaner Products, the Disinfectant Spray Products contain alkyl dimethyl benzyl ammonium chloride C14 and C12, and substantially similar alkyl dimethyl benzyl ammonium chloride C15, all of which are

18

harmful to children and pets. No product can be trusted for use on surfaces pets and children use most when it contains any trace of alkyl dimethyl benzyl ammonium chloride C15, C14, or C12.

61.     Defendant intended that Plaintiff and other consumers would reasonably rely upon the misrepresentations, misleading characterizations, and material omissions concerning the true nature of the Products.

62.     Plaintiff and Class Members acted reasonably in relying on the challenged labeling claims, which Defendant intentionally placed on the Products' labeling, with the intent to induce average consumers into purchasing the Products.

63.     Plaintiff and Class Members would not have purchased the Products, or would not have been willing to pay the price they paid, if they had known that the labeling representations and omissions complained of herein were false and misleading in that the Disinfectant Cleaner Products contain ingredients that are harmful to both children and pets, specifically alkyl dimethyl benzyl ammonium chloride C15, C14, C12, and C10.

64.     Defendant's Products cost more than similar products without misleading labeling and would have cost less absent Defendant's false and misleading statements and omissions.

65.     For example, Lysol Lemon Breeze contains alkyl dimethyl benzyl ammonium chloride C14, C12, and C10 in the active ingredients, but is not marketed as "EXPERTLY FORMULATED FOR USE IN HOMES WITH CHILDREN AND PETS," or otherwise represented as safe for use around children and pets, and costs less than Defendant's Disinfectant Cleaner Products.

66.     Through the Products' misleading labeling claims and omissions, Defendant was able to gain a greater share of the market than it would have otherwise and also increase the size of the market.

67. For these reasons, Defendant's Products were worth less than what Plaintiff and the Class paid for them.

68. Plaintiff and the Class lost money as a result of Defendant's deceptive claims, omissions, and practices in that they did not receive what they paid for when purchasing Defendant's Products.

69. Plaintiff continues to desire to purchase cleaning products that are safe for children and pets, and continues to see Defendant's Products at stores when he shops and available at online retailers. He would purchase the Products in the future if they were in fact a "FAMILY GUARD" "EXPERTLY FORMULATED FOR USE IN HOMES WITH CHILDREN AND PETS," and safe for children and pets, as represented, but has stopped purchasing the Products because the safety of the Products for children and pets is material to his purchase decision, and they currently are not safe for children and pets.

70. Plaintiff would purchase the Products in the future if he could trust that the safety representations were true and not false or misleading, but absent an injunction, Plaintiff will be unable to trust the representations on the Products when he encounters them in the marketplace. Even if the Products were reformulated to remove alkyl dimethyl benzyl ammonium chloride C15, C14, C12, and C10, Plaintiff and other consumers would be unable to discern their safety for children and pets because they do not have the chemical and medical expertise necessary to make that determination.

71. Plaintiff's legal remedies are inadequate to prevent these future injuries.

### V. CLASS REPRESENTATION ALLEGATIONS

72. Plaintiff brings this action individually and as a representative of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following

defined Class and Subclass (together, the "Classes"):

> **NATIONAL CLASS:** All persons in the United States who purchased the Products for personal or household use within any applicable limitations period ("National Class")

> **ILLINOIS SUBCLASS**: All persons in the State of Illinois who purchased the Products for personal or household use within any applicable limitations period ("Illinois Subclass")

73.     Members of the classes described above are referred to as "Class Members" or members of the "Classes."

74.     The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

75.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff's claims can be proven on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

76.     **Numerosity- Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in at least the thousands. The precise number or identification of members of the Classes are presently unknown to Plaintiff but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action

by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

77.     Commonality and Predominance- Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3). Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to:

     a.  Whether Defendant violated the ICFA
     b.  Whether Defendant communicated a message through the packaging and advertising of Defendant's Products that the Products are safe for children and pets;
     c.  Whether that message is material, or likely to be material, to a reasonable consumer;
     d.  Whether the challenged claims are false, misleading, or reasonably likely to deceive a reasonable consumer,
     e.  Whether Defendant was unjustly enriched;
     f.  The proper amount of damages; and
     g.  The proper scope of injunctive relief.

78.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

79.     **Typicality- Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of other Class Members because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each Class Member were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

80.     **Adequacy of Representation- Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Classes because Plaintiff is a member of the Classes

and Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff has also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

81.     **Superiority- Federal Rule of Civil Procedure 23(b)(3)-**A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### VI.     CAUSES OF ACTION

<u>COUNT I:</u>
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT ("ICFA")**
**815 ILCS 505/1,** *et seq.*
**On Behalf of the Illinois Subclass**

82.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

83. Plaintiff and other Illinois Subclass Members are persons within the context of the ICFA, 815 ILCS 505/1(c).

84. Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

85. At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

86. Plaintiff and members of the proposed Illinois Subclass are "consumers" who purchased the Products for personal, family or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

87. The ICFA prohibits engaging in any "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

88. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

89. Plaintiff and the other Illinois Subclass Members reasonably relied upon Defendant's representations that the Products were a "FAMILY GUARD" "EXPERTLY FORMULATED FOR USE IN HOMES WITH CHILDREN AND PETS," and/or "FAMILY GUARD" ""USE ON 100 + SURFACES, INCLUDING WHERE KIDS AND PETS PLAY" to conclude that the Products were safe for children and pets and did not contain or risk containing ingredients harmful to children or pets.

90.     Defendant's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, et seq.

91.     Defendant violated the ICFA by representing that the Products have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

92.     Defendant advertised the Products with intent not to sell it as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

93.     Defendant engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

94.     Defendant engaged in misleading and deceptive advertising that represented that the Products were safe for children and pets, specifically that the Products are a "FAMILY GUARD" "EXPERTLY FORMULATED FOR USE IN HOMES WITH CHILDREN AND PETS" and/or "FAMILY GUARD" "USE ON 100 + SURFACES, INCLUDING WHERE KIDS AND PETS PLAY."   Defendant chose to label the Products in this way to impact consumer choices and gain market dominance because it knew consumers prefer and are willing to pay more for Products that are safe for pets and children. However, the Products are not safe for children or pets, as they contain alkyl dimethyl benzyl ammonium chloride C14, C12, and C10. A cleaning product can never be "expertly formulated for use in homes with children and pets" if it contains any trace of alkyl dimethyl benzyl ammonium chloride C14, C12, and C10.

95.     Defendant intended that Plaintiff and other Illinois Subclass Members would reasonably rely upon the misrepresentations, misleading characterizations, and material omissions concerning the true nature of the Products.

96. Defendant's misrepresentations, concealment, omissions and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and each of the other Illinois Subclass Members to be deceived about the true nature of the Products.

97. Plaintiff and Illinois Subclass Members have been damaged as a proximate result of Defendant's violations of the ICFA and have suffered damages as a direct and proximate result of purchasing the Products.

98. As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff and Illinois Subclass Members have suffered ascertainable loss of money caused by Defendant's misrepresentations and omissions in the labeling of the Products.

99. Had they been aware of the true nature of the Products, Plaintiff and Illinois Subclass Members either would have paid less for the Products or would not have purchased the Products at all.

100. Plaintiff and Illinois Subclass Members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under sections 815 ILCS 505/10a of the ICFA. Plaintiff and Illinois Subclass Members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

**COUNT II**
**Unjust Enrichment**
**On Behalf of the Classes**

101. Plaintiff, on behalf of himself and all others similarly situated in the Classes, realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

102. Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

103. This claim is brought under the laws of the State of Illinois.

104. To state a claim for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989)

105. Plaintiff and the Classes conferred upon Defendant an economic benefit, in the form of profits resulting from the purchase and sale of Defendant's Products, including through an increased market and market share.

106. Defendant voluntarily accepted and retained these benefits.

107. Defendant's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and other Class Members' purchases of the Products, and the economic benefits conferred on Defendant are a direct and proximate result of its unlawful and inequitable conduct.

108. It would be inequitable, unconscionable, and unjust for Defendant to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

109. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and other Class Members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendant as a result of such business practices, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter an Order:

a.      Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class Representative for the Classes, and appointing the undersigned as Class Counsel for the Classes;

b.      Adjudging that Defendant's conduct violates the causes of actions referenced herein;

c.      Finding in favor of Plaintiff and the Classes on all counts herein;

d.      Enjoining Defendant from continuing to engage in the unlawful conduct set forth herein;

e.      Awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

f.      Requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

g.      Awarding compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

h.      Awarding reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

i.      For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff and the Classes demand a trial on all triable issues.

Dated:  March 23, 2024                    **CONSUMER LAW ADVOCATE, PLLC.**

                                     By:      /s/ Matthew T. Peterson

MATTHEW PETERSON
Consumer Law Advocate, PLLC
230 E. Ohio St., Suite 410
Chicago, IL 60611
Tel: (815) 999-9130
mtp@lawsforconsumers.com
ARDC No. 6321290

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (*phv forthcoming)
MELANIE MONROE (*phv forthcoming)
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741
jfitzgerald@fmfpc.com
mmonroe@fmfpc.com